UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GERARDO RODRIGUEZ and
MANALI OLEKSY,

        Plaintiffs,

        v.                                              Case No. 20-C-1819

CITY OF GREEN BAY,

        Defendant.

## DECISION AND ORDER

Plaintiffs Gerardo Rodriguez and Manali Oleksy brought this action against Defendant City of Green Bay challenging the City's Proclamation of Emergency in response to the civil unrest that occurred in the aftermath of the death of George Floyd. The Proclamation set a curfew in the City of Green Bay for all persons from 9:00 p.m. until 6:00 a.m. beginning on June 1, 2020, and ending on June 7, 2020. Plaintiffs claim that the City's curfew deprived them of their constitutional rights because the curfew was unconstitutionally vague and was selectively enforced based on the content of protected speech and race. The case is before the Court on the City's motion for summary judgment. For the following reasons, the motion will be granted, and the case will be dismissed.

## PRELIMINARY MATTERS

Before turning to the parties' substantive arguments, the Court will address two preliminary matters. First, on September 23, 2021, the day before the dispositive motion deadline, Plaintiffs filed an amended complaint, without leave of the Court, seeking to add six individuals as plaintiffs and Green Bay Police Chief Andrew Smith as a defendant. On October 4, 2021, the City filed a motion to strike the amended complaint. Plaintiffs did not respond to the motion.

A party may amend his pleading once as a matter of course within 21 days after serving it or 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). In all other instances, a party must obtain "the opposing party's written consent or the court's leave" to amend his pleading. Fed. R. Civ. P. 15(a)(2). Plaintiffs did not seek leave to amend the complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be "freely given when justice so requires," absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id*. Plaintiffs' amendment comes after the close of discovery and one day before motions for summary judgment were due. The deadline for filing amendments to the pleadings has long passed, and Plaintiffs have offered no explanation for their late filing. In addition, Plaintiffs have not provided any facts or reasons to persuade the Court to allow leave to amend the complaint. At this point, allowing the amended complaint would prejudice the City. Therefore, the City's motion to strike the amended complaint is granted. The amended complaint (Dkt. No. 21) is stricken.

Second, Plaintiffs submitted an unsigned response to the City's proposed findings of fact and statement of undisputed facts. Federal Rule of Civil Procedure 11 provides that courts "*must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.*" Fed. R. Civ. P. 11(a) (emphasis added). After Plaintiffs' counsel filed the response to the City's proposed findings of fact and statement of Plaintiffs' undisputed facts, the Clerk of Court advised Plaintiffs on December 2, 2021, that the document was not signed and was required to be refiled with a signature. To date Plaintiffs have not filed a signed response to the City's proposed findings of fact and statement of Plaintiffs' undisputed facts. Therefore, Plaintiffs' response to the City's proposed findings of fact and statement of Plaintiffs' undisputed

facts (Dkt. No. 33) is stricken. *See Marcure v. Lynn*, 992 F.3d 625, 628 (7th Cir. 2021) ("By its plain terms, Rule 11(a) is mandatory when triggered—'must' does not mean 'may.'").

Even if the Court did not strike Plaintiffs' response to the City's proposed findings of fact and statement of undisputed facts, Plaintiffs did not submit an affidavit or cite any evidence to support their proposed findings of fact. Pursuant to the local rules, the party opposing a motion for summary judgment must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii).

The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling Inc.*, 599 F.3d 626 (7th Cir. 2010) (citing *Patterson v. Indiana Newspapers Inc.*, 589 F.3d 357, 360 (7th Cir. 2009)). Because Plaintiffs did not comply with the local rules regarding summary judgment procedures, the Court would not consider Plaintiffs' additional proposed findings of fact in any event. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance, with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed."). The Court now turns to the City's motion for summary judgment.

3

# BACKGROUND

In late May 2020, widespread protests occurred across the country, including in Green Bay, Wisconsin, in the aftermath of the death of George Floyd while in the custody of Minneapolis police. On May 31, 2020, and into the morning hours of June 1, 2020, several riotous individuals endangered the health, safety, welfare, and good order of Green Bay by engaging in unlawful activity unrelated to any peaceful protest. Such activity included, but was not limited to, destruction of private property and looting of a business located on Walnut Street and Monroe Avenue, discharging firearms, throwing items at Green Bay Police Department officers and property, and various acts of vandalism.

On June 1, 2020, the City issued a Proclamation of Emergency cataloguing the incidents that occurred on May 31, 2020, and imposing a curfew in the City from 9:00 p.m. until 6:00 a.m., beginning June 1, 2020, and ending June 3, 2020. *Proclamation of Emergency* at 1–2, Dkt. No. 25-1. Mayor Eric Genrich signed the Proclamation of Emergency, as Chief Elected Official of the City of Green Bay, on June 1, 2020. The purpose of the curfew was to protect the citizens of Green Bay from suffering any harm resulting from violence occurring in the City; to limit pedestrian and vehicular travel to promote the health, safety, welfare, and good order in the City; and to stop the looting and property damage to private and public property that had occurred prior to June 1, 2020. The curfew only applied to public areas, such as streets and sidewalks, and contained no requirement that protest activity could not occur on private property. Mayor Genrich and Green Bay Police Chief Andrew Smith held a press conference on June 1, 2020, during which the City declared a state of emergency under Wis. Stat. § 323.11 and ordered a curfew imposed on all City residents.

The City of Green Bay Common Council met to discuss the Proclamation of Emergency and ratified the Proclamation Declaring a State of Emergency on June 2, 2020. The Proclamation provides:

> [P]ursuant to sections 323.11 and 323.14(4) of the Wisconsin Statutes, the City of Green Bay hereby declares a local State of Emergency for the City of Green Bay, and order an emergency curfew in the entire City of Green Bay for all persons from 9:00 p.m. until 06:00 a.m. beginning on June 1st, 2020, and ending on June 8th, 2020, unless earlier terminated if the Mayor and Emergency Operations Manager determine that the conditions giving rise to the emergency no longer exist. All persons shall cease vehicular and pedestrian travel on the public way, streets, sidewalks and highways and return to their homes, places of work or other convenient place. The following individuals, working in their official capacity are exempt from this order: government personnel, emergency services personnel, utility services providers, medical providers, social services providers, and credentialed press. Persons experiencing homelessness or fleeing dangerous domestic situations are also exempt from this order. Intentional failure to comply with this order is subject to a forfeiture of not more than $200.00 pursuant to Wis. Stat. sec. 323.28.

*Resolution Declaring a State of Emergency and Ordering a Curfew for the City of Green Bay* at 1–2, Dkt. No. 25-2 (the Curfew Ordinance).

Plaintiff Manali Oleksy, a resident of the Village of Allouez, Wisconsin, was arrested on June 3, 2020, at 9:24 p.m. for violating the curfew. At the time of her arrest, Oleksy was on a public sidewalk engaged in a public demonstration. Plaintiff Gerardo Rodriguez, a City of Green Bay resident, was arrested on June 4, 2020, at 9:50 p.m. for violating the curfew. Rodriguez was kneeling in the grass across the street from the Green Bay Police Department. Prior to his arrest, officers informed Rodriguez that he was violating the curfew and that he needed to leave. Rodriguez refused to leave and was subsequently arrested. On June 7, 2020, the City ended the curfew because the Mayor and the City's Emergency Operations Manager determined that the conditions giving rise to the emergency curfew no longer existed.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v.*

*Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Plaintiffs assert that the Curfew Ordinance deprived them of their constitutional rights. Although political demonstrations and protests are forms of expression protected by the First Amendment, those protections are not absolute. *See* U.S. Const. amend. I. "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks and citations omitted).

Plaintiffs do not dispute that the Curfew Ordinance, as written, is facially valid. Indeed, the Curfew Ordinance applied to "all persons," except certain individuals working in their official capacities, including government personnel, emergency services personnel, utility services providers, medical providers, social services providers, and credentialed press, as well as persons experiencing homelessness or fleeing dangerous domestic situations. Dkt. No. 25-2 at 1–2. The

Curfew Ordinance was content neutral because it prohibited all nonexempt individuals from being out from 9:00 p.m. to 6:00 a.m., regardless of the content of their speech or any message they intended to convey. The Curfew Ordinance was also narrowly tailored to a significant government interest to address the violence and vandalism occurring at night. That narrow tailoring allowed for ample alternative channels for expression, as citizens were able to engage in peaceful protests and exercise their First Amendment rights between 6:00 a.m. and 9:00 p.m. In other words, the Curfew Ordinance imposed reasonable time, place, and manner restrictions on expression.

Plaintiffs nevertheless assert that the Curfew Ordinance was unconstitutionally vague due to statements and qualifications allegedly made by City officials. It is the language of the ordinance, however, not an official's characterization of it, that determines whether the ordinance is unconstitutionally vague. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (internal quotation marks and citation omitted). An ordinance is void for vagueness if it "does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited" or "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing" it. *United States v. Eller*, 670 F.3d 762, 764–65 (7th Cir. 2012) (citation omitted).

The Curfew Ordinance provides that, from 9:00 p.m. to 6:00 a.m., "all persons," other than government personnel, emergency services personnel, utility services providers, medical providers, social services providers, and credentialed press working in their official capacities or the homeless and individuals fleeing dangerous domestic situations, "shall cease vehicular and pedestrian travel on the public way, streets, sidewalks and highways and return to their homes, places of work or other convenient place." Dkt. No. 25-2 at 1–2. It continues, "Intentional failure to comply with this order is subject to a forfeiture of not more than $200.00." *Id.*

7

Plaintiffs maintain that, while the Curfew Ordinance, as written, identifies the class of persons to whom it applies and the conduct that is forbidden, the "actual content of the Curfew was disseminated by City officials through the media in press releases or press conferences." Pls.' Resp. Br. at 7, Dkt. No. 32. They assert that soon after the ordinance was enacted, the City began announcing additional exceptions to the curfew, to the point that it became unclear what conduct was prohibited after 9:00 p.m. Plaintiffs have presented no admissible evidence to show that the Curfew Ordinance was unconstitutionally vague, however. Although Plaintiffs submitted newspaper articles to support their assertion, newspaper articles offered for the truth of the reported information are inadmissible hearsay and cannot be relied upon for summary judgment proceedings. *See Chi. Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Based on the record before the Court, a person of ordinary intelligence would certainly understand what conduct is prohibited by the Curfew Ordinance, and nothing in the text of the Curfew Ordinance encourages "arbitrary and discriminatory enforcement." *Eller*, 670 F.3d at 765. Plaintiffs have not established that the Curfew Ordinance was unconstitutionally vague.

Plaintiffs also argue that the Curfew Ordinance was selectively enforced to punish those exercising their right to free speech. Generally, "an equal protection violation occurs when a regulation draws distinctions among people based on a person's membership in a 'suspect' class. Suspect classes include race, alienage, and national origin." *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009) (internal citation omitted). As an equal protection claim, a claim of selective enforcement requires "proof 'that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.'" *Conley v. United States*, 5 F.4th 781, 789 (7th Cir. 2021) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001)). Plaintiffs argue that the Curfew Ordinance's true purpose was to stop Black Lives Matter protests and offer the conclusory

assertion that "the evidence is undisputed that only 'protestors' were the class targeted for enforcement." Pl.'s Resp. Br. at 7. But Plaintiffs have presented no admissible evidence that the Ordinance was selectively enforced against Black Lives Matter protesters based on the content of their speech or race. Again, the Curfew Ordinance did not target protesters; it applied to "all persons," except those individuals who engaged in a line of work that were required to provide certain services to the City and its citizens during the night as well as persons experiencing homelessness or fleeing dangerous domestic situations. In sum, the Ordinance is not unconstitutionally vague and Plaintiffs have failed to offer any admissible evidence in support of their claims of selective enforcement. Accordingly, summary judgment must be granted in favor of the City.

## CONCLUSION

For these reasons, the City's motion to strike the amended complaint (Dkt. No. 27) and motion for summary judgment (Dkt. No. 22) are **GRANTED**. Plaintiffs' amended complaint (Dkt. No. 21) and Plaintiffs' response to the City's proposed findings of fact and statement of Plaintiffs' undisputed facts (Dkt. No. 33) are **STRICKEN**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 18th day of March, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
